IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

O.Z. MARTIN,

    Plaintiff,                    No. CIV S-04-2234 FCD KJM P

    vs.

EDWARD ALAMEIDA, et al.,        <u>ORDER AND</u>

    Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Defendants Traquina, Thor, Carey and Alameida have filed a motion for summary judgment. Plaintiff has filed a motion for further discovery and a postponement of the ruling on the motion for summary judgment to permit him to pursue the additional discovery.

        In his complaint, plaintiff alleges he was assaulted in February 2000 while a pretrial detainee in Alameda County; as a result, he suffered an orbital eye fracture and the loss of a significant portion of one ear. Compl. ¶¶ 64-66. He was transferred to state prison before receiving reconstructive surgery for his ear. <u>Id</u>. ¶ 68. This surgery, he alleges, was not elective cosmetic surgery, but was "prescribed and ordered" to treat a serious medical need. Compl. ¶¶ 70-71, 82, 87. He alleges that defendants Traquina and Thor, medical officers at California State Prison, Solano (CSP-Solano), were responsible for medical care of inmates and yet

1

acquiesced in the denial of plaintiff's surgery. Id. ¶¶ 22-33. Plaintiff claims that defendants Alameida, former director of the Department of Corrections, and Carey, warden of CSP-Solano, were responsible for enforcing policies guaranteeing medical care for inmates, failed to train medical staff, and acquiesced in a policy of denying surgery for plaintiff's serious medical need. Id. ¶¶ 1-2, 55, 59-62, 82.

I. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> 
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

Case 2:04-cv-02234-FCD-KJM   Document 58   Filed 08/14/07   Page 4 of 12

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On March 22, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Facts[1]

On February 5, 2000, while plaintiff was housed at Santa Rita County Jail, he got into a fight with his cell-mate, who fractured the bone around plaintiff's left eye and bit off a 1½ by ½ inch section from the top of plaintiff's left ear.  Motion for Summary Judgment (MSJ), Ex. A at 4; Complaint (Compl.), Ex. A at 13-14.[2]  Around 4:30 p.m., plaintiff was taken to Highland Hospital.  Around 6:00 p.m., deputies recovered the piece of plaintiff's ear from his cell and took it to the hospital, but doctors determined it could not be reattached.  MSJ, Ex. A at 4; Compl., Ex. A at 13-14.

On February 16, 2000, plaintiff returned to Highland General Hospital, where the fractured orbital bone was repaired with the insertion of a plate.  MSJ, Ex. B at 3-5; Compl., Ex. A at 10-12.

/////

---

[1] In their statement of undisputed facts, defendants discuss the treatment of plaintiff's other medical conditions, which has prompted plaintiff to respond in kind.  Because these matters were not part of the complaint, the court will not address them.

[2] The information in this section is from a police report generated by the Alameda County Sheriff's Office, but offered through a custodian of records at CSP-Solano, apparently as a record of a regularly conducted activity.  Fed. R. Evid. 803(6).  Although it does not appear to qualify under that exception, plaintiff has attached a copy of the same report to his complaint and thus apparently has no objection to the court's reliance on it.  Compl., Ex. A.

1  On March 8, 2000, Dr. Tawfilis, a dentist who was doing his residency in oral and
2 maxillofacial reconstruction at Highland Hospital, referred plaintiff to the plastic surgery clinic at
3 the hospital for reconstruction of the ear and surgery was set for May 8. MSJ, Ex. B at 6;
4 Compl., Ex. A at 5; Declaration of A. Tawfilis, D.D.S. (Tawfilis Decl.) ¶¶ 1-3; Pl.'s Opposition
5 (Opp'n) ¶ 2.[3] Dr. Tawfilis does not have the expertise to determine whether reconstructive
6 surgery was medically necessary or cosmetic in nature. Tawfilis Decl. ¶ 4.[4] Plaintiff was
7 transferred to the Department of Corrections before the date set for the surgery. MSJ, Ex. A at
8 9, 10.

9  Plaintiff arrived at CSP-Solano in July 2002. MSJ, Ex. A at 9, 11. On October
10 28, 2002, plaintiff asked Dr. Obedoza for a referral to a plastic surgeon to rebuild the missing
11 portion of his ear. MSJ, Ex. B at 12. Dr. Weaver prepared a "consult request," noting that
12 plaintiff "was assaulted 2/5/200 in Alameda County Jail. Large piece of [left] ear was bitten off.
13 I/M requests repair. This would represent elective cosmetic repair since there is no disability
14 from the injury." MSJ, Ex. B at 13. On November 6, 2002, the Medical Authorization Review
15 (MAR) Committee denied the request for a consultation because "medical necessity not met,
16 repair would be cosmetic." MSJ, Ex. B at 14.

17  On December 11, 2002, plaintiff told the nurse that he wanted to "discuss his ear."
18 The progress notes for that day's visit to Dr. Traquina contain no further reference to his ear.
19 MSJ, Ex. B at 15.

---

[3] The opposition is signed under the penalty of perjury; its first section is set up in declaration form.

[4] Plaintiff claims that the surgery was scheduled by a Dr. Allen and refers the court to Exhibit B, attached to his declaration. This exhibit is the same page of physician's notes included with defendants' motion. See MSJ, Ex. B at 6. The notes say that plaintiff should be scheduled in May for reconstruction with Dr. Allen; they use the medical symbol for "with," which is the letter "c" with a line over its top. See Medical Records Analysis, Deciphering Medical Acronyms and Symbols <http://www.goforthmedical.com/acronyms.htm> accessed 7/5/07. The note itself is signed by Dr. Tawfilis.

At another doctor's visit on April 14, 2003, plaintiff told the nurse he wanted "ear reconstruction surgery." He was seen by Dr. Obedoza, who noted "[left] ear plastic surgery–called VM + still cosmetic. Denied." MSJ, Ex. B at 16.

On April 22, 2003, plaintiff submitted a grievance (a 602), seeking reconstructive surgery. MSJ, Ex. A at 12. Dr. Obedoza interviewed plaintiff about this grievance on May 12, 2003, and noted "resubmit appeal to MAR" for repair of left ear. MSJ, Ex. B at 16. That same day, Dr. Obedoza submitted a consult request, noting "large piece of left ear pinna was bitten off. Need repair." The form is stamped, "Rejected June 11 2003"; handwritten on it is the notation "Medical necessity not met–purely cosmetic." MSJ, Ex. B at 17-18.

Plaintiff pursued his administrative remedies and on August 6, 2003, defendant Thor, a doctor, denied the appeal at the first level, noting that he reviewed plaintiff's medical records and the MAR committee denials before determining that the appeal should be denied. MSJ, Ex. A at 15. Defendant Thor is Chief Physician and Surgeon, whose responsibilities include assisting "in the supervision necessary to maintain high standards of medical care" and serving "as consultant to staff members on unusual or difficult medical problems. . . ." Pl.'s Decl. in Opp'n to MSJ (Martin Decl.), Ex. D at 2-3.

Defendant Traquina is doctor and Chief Medical Officer at CSP-Solano. MSJ, Ex. A at 16-17. Among other things, the Chief Medical Officer is responsible for "pass[ing] upon difficult medical problems in directing the staff. . . ." and "direct[ing] the medical . . . services for the care and treatment of inmates. . . ." Martin Decl., Ex. D at 1. Dr. Traquina denied plaintiff's appeal at the second level, again after reviewing plaintiff's medical records:

> This [attack] resulted in a significant cosmetic defect of your left pinna (ear). However, this does not cause any functional impairment. The large cosmetic defect of your left ear is not amenable for cosmetic surgery within the California Department of Corrections as indicated above on **the California Code of Regulations, Title 15, CCR 3350.1. Medical Treatment/Service Exclusions.** (3) **Conditions that are cosmetic**.

/////

> Based on the above findings, your medical issues have been addressed and the medical care provided to you has been appropriate. There is no evidence to support your allegation that the Medical Authorization Review Committee (MARC) violated your civil rights.

MSJ, Ex. A at 17 (emphasis in original). The appeal was denied at the Director's Level on November 6, 2003. MSJ, Ex. A at 18.

Plaintiff avers that the injury to his ear is not only disfiguring, but also causes him to suffer "severe physical and mental and emotional pain and distresses." Opp'n ¶ 8; see also Compl. ¶ 87.

III. Analysis

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

/////

/////

/////

1   There is no Eighth Amendment violation if any delay in treatment is not harmful. Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985).  However, unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at 1062.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998).  A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain.  McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.

Id. at 1060.

Defendants argue that plaintiff has not shown that rebuilding his disfigured ear constituted a serious medical need because the surgery was not medically necessary but rather was cosmetic.  However, "because a condition might be characterized as 'cosmetic' does not mean that its seriousness should not be analyzed. . . ."  Brock v. Wright, 315 F.3d 158, 164 n.3 (2d Cir. 2003).

   A.   Serious Medical Need

Plaintiff avers that the injury to his ear causes him physical pain.  Opp'n ¶ 8; Compl. ¶ 87. The Eighth Amendment duty to provide medical care applies "to medical

1 conditions that may result in pain and suffering which serve no legitimate penological purpose."
2 Canell v. Bradshaw, 840 F.Supp. 1382, 1393 (D. Or. 1993), aff'd, 97 F.3d 1458 (9th Cir. 1996).
3 In addition, in Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974), the Court of Appeals for
4 the Second Circuit suggested that a refusal to reattach a severed ear might violate the Eighth
5 Amendment.

6       This court need not resolve the question whether the rebuilding of plaintiff's ear
7 constitutes a serious medical need, however, for plaintiff has failed to show that defendants Thor
8 and Traquina were deliberately indifferent or that defendants Alameida and Carey, the director of
9 Corrections and the warden, respectively, were deliberately indifferent either.

10     B.   Deliberate Indifference

11       Plaintiff has presented nothing to rebut the defendants' evidence that all the
12 doctors who considered plaintiff's request for reconstructive surgery did not consider the
13 procedure to be medically necessary. He also has presented nothing showing that he told any of
14 the doctors that the injury was painful. The doctors' failure to act in this situation cannot be
15 deemed deliberately indifferent.

16       Indifference can be shown when prison doctors ignore recommendations from
17 specialists or outside physicians. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (summary
18 judgment not appropriate when plaintiff showed that defendant ignored recommendation from
19 outside doctor and prison specialist that plaintiff receive physical therapy); White v. Napoleon,
20 897 F.2d 103, 106, 110 (3d Cir. 1990) (claim for deliberate indifference stated where plaintiff
21 alleged prison doctor disregarded instructions of prior doctors to use Valisone ointment to avoid
22 side effects and to achieve effective treatment of ear infection). Plaintiff relies on the fact that
23 reconstructive surgery was scheduled at Highland Hospital to argue both that he had a serious
24 medical need and that defendants Thor and Traquina were deliberately indifferent to it when they
25 denied his grievances despite their duty and authority to oversee the provision of necessary
26 medical services.

Defendants have countered this showing by proffering the declaration of Dr. Tawfilis, whose signature appears on the physician's notes authorizing the surgery; Dr. Tawfilis, a dentist with a speciality in oral and maxillofacial reconstruction, avers that when he referred plaintiff to the plastic surgery clinic, he did not have the expertise to determine whether such surgery was medically necessary or merely cosmetic. Plaintiff has presented nothing rebutting this declaration. Accordingly, defendants Thor and Traquina were not deliberately indifferent when they diverged from the earlier order for reconstruction in light of the referring physician's concession that he did not know whether such surgery was medically necessary.

Finally, plaintiff alleges that defendants Alameida and Carey, both administrators, were deliberately indifferent because they failed adequately to train medical personnel, monitor compliance with policies regarding health care for inmates, and failed to intervene when they were made aware that plaintiff was denied surgery. Plaintiff has not identified any specific lack of training or failure to monitor compliance with any policy. He argues, in essence, that because prison doctors were deliberately indifferent to his medical needs, supervisors were not doing their jobs. However, as noted above, he has not raised a triable issue of fact on the question of deliberate indifference; any policy failure therefore cannot be the cause of any injury. <u>Arnold v. International Business Machines Corporation</u>, 637 F.2d 1350, 1355 (9th Cir. 1981) (plaintiff must show proximate causation to sustain a claim under the civil rights act). Moreover, there is no deliberate indifference when a supervisor without medical training acquiesces in a determination by medical personnel that surgery is not necessary. <u>Johnson v. Doughty</u>, 433 F.3d 1001, 1010-11 (7th Cir. 2006).

IV.  <u>Motion To Reopen Discovery And Delay Summary Judgment</u>

Plaintiff seeks to stay the pending summary judgment motion and to reopen discovery to permit him to discover the names of the people who sat on the MAR committees that denied the requests for a plastic surgery consultation and information on Dr. Allen, who

/////

plaintiff believes authorized the reconstructive surgery at Highland Hospital. Defendants have opposed the motion.

Rule 56(f) of the Federal Rules of Civil Procedure permits a court to deny or continue determination of a motion for summary judgment "should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." The Ninth Circuit has explained that parties seeking to delay resolution of a summary judgment motion to pursue further discovery must meet three requirements:

> (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion.

California ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). Plaintiff has not made this showing. As noted above, Dr. Tawfilis referred plaintiff to Dr. Allen; it was not Dr. Allen who ordered the reconstructive surgery for plaintiff. Further discovery on this subject would not produce facts essential to defeating summary judgment. Moreover, plaintiff has not explained how information on the other members of the MAR committee would bear on the resolution of the motion for summary judgment. He has not made a sufficient showing to justify the request.

IT IS HEREBY ORDERED that plaintiff's motion to reopen discovery and delay summary judgment is denied.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment be granted.

/////
/////
/////
/////

1. These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 13, 2007.

U.S. MAGISTRATE JUDGE

/mart2234.57